IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:19-CV-46-BO

DENTAL CARE LEASING, LLC and )
STEPHANIE G. HACKNEY, D.D.S. II, PLLC )
d/b/a ASAP URGENT DENTAL CARE, )
                                                                         )
      Plaintiffs, )
                                                                         )
v. )     O R D E R
                                                                         )
KARL W. MILLER and EXPRESS URGENT )
DENTAL CARE LLC d/b/a EXPRESS URGENT )
DENTAL CARE, )
                                                                        )
      Defendants. )

This matter is before the Court on defendants' motions to dismiss [DE 22, 32] and plaintiffs' motions for default judgment [DE 18] and a preliminary injunction [DE 19]. The motions have been fully briefed and are ripe for disposition. For the reasons that follow, defendants' first motion to dismiss [DE 22] is denied as moot, plaintiffs' motion for default judgment [DE 18] is denied as moot, defendants' second motion to dismiss [DE 32] is denied, and plaintiffs' motion for a preliminary injunction [DE 19] is denied.

## BACKGROUND

In October 2017, Dr. Stephanie G. Hackney, a licensed dentist, and defendant Karl W. Miller organized plaintiff Dental Care Leasing, LLC ("DCL"), under the laws of North Carolina. [DE 1, ¶ 16]. DCL was incorporated "to manage and support the 'ASAP Urgent Dental Care' brand and business model." *Id.* More specifically, DCL was formed to "provide certain management, administrative, leasing, and other contractual services" for ASAP and to "maintain propriety ownership and management of any intellectual property" related to ASAP's practices.

*Id.* ¶ 17. Plaintiff ASAP Urgent Dental Care ("ASAP") is an urgent dental care clinic that Dr. Hackney established, hoping to provide urgent dental services to "underserved areas across the United States, starting with the flagship practice located in Wilmington, North Carolina." *Id.* ¶ 11–12.

In September 2017, Dr. Hackney filed two intent-to-use trademark applications to cover "ASAP URGENT DENTAL CARE" as a service mark and logo for "urgent dental care center services." *Id.* ¶ 26. By December 2017, ASAP had created a "confidential, proprietary business manual," outlining ASAP's business model, which plaintiffs allege "represented a paradigm shift in the provision of urgent dental care and encompassed valuable trade secrets." *Id.* ¶ 13. Plaintiffs contend that the trade secrets included "the study of market demographics, the development of market strategies, the use of industry partners and technology, the provision of unique delivery platforms and revenue models, and other proprietary and confidential information." *Id.* Plaintiff DCL owned all of these alleged trade secrets and took reasonable steps to maintain their confidentiality. *Id.* ¶ 14–15. Around the same time, December 2017, Dr. Hackney incorporated ASAP as a professional limited liability company, with Dr. Hackney as its sole member and manager. *Id.* ¶¶ 33–35.

Plaintiff alleges that, at the time DCL was incorporated, defendant Miller was the company's sole member. *Id.* ¶ 20. At some point thereafter, Mr. Miller transferred all of his rights and interest in DCL to Dr. Hackney and the Jack Preston Miller Irrevocable Trust ("Miller Trust"). *Id.* ¶ 21. In March 2018, Dr. Hackney and the Miller Trust entered into an operating agreement that gave Dr. Hackney a 75% interest in DCL and gave the Miller Trust a 25% interest. *Id.* ¶¶ 22–23. Pursuant to the agreement, Mr. Miller was appointed as DCL's manager. *Id.* ¶ 24. Importantly,

2

Mr. Miller is not a dentist or healthcare provider. *Id.* ¶ 25. ASAP then established its first, and to date only, urgent care facility in Wilmington, North Carolina. *Id.* ¶ 36.

In June 2018, registration of ASAP's trademarks, Nos. 5,493,947 and 5,493,948, became effective. *Id.* ¶ 28. Dr. Hackney assigned all of her rights and interests in the trademarks to DCL. *Id.* ¶ 29. The trademarks remain in force under DCL's ownership. *Id.* ¶ 31.

In September 2018, Dr. Hackney, Mr. Miller, and the Miller trust "terminated their business relationship." *Id.* ¶ 38. They executed a redemption agreement in which the Miller Trust transferred its 25% interest in DCL back to DCL. *Id.* ¶ 39. Mr. Miller simultaneously resigned as manager of DCL, agreed to transfer and assign his rights and interests in certain assets to DCL, took title of a vehicle used by DCL, and agreed to a non-compete provision. *Id.* ¶¶ 40–45. The non-compete required Mr. Miller, during the restricted period and within the restricted territory, to refrain, either "directly or by assisting others," from "perform[ing] services of the type conducted, authorized, offered, or provided by Miller in his capacity as" DCL's manager. *Id.* ¶ 42–43. The restricted period was defined as 36 months from the effective date of the redemption agreement and the restricted territory was defined as "(a) the United States of America; (b) the States east of the Mississippi River; (c) the State of North Carolina" and various counties in North Carolina. *Id.*

A few months later, in December 2018, plaintiffs allege that Mr. Miller "took steps to start a competing urgent dental care practice." *Id.* ¶ 46. Specifically, plaintiffs allege that Mr. Miller established defendant Express Urgent Dental Care ("Express") in Metairie, Louisiana, and then applied to trademark a logo containing that trade name and a logo similar to ASAP's. *Id.* ¶¶ 46–50. Mr. Miller registered Express as a Delaware limited-liability company in December 2018 and

3

created a website and various social media accounts to promote the company. *Id.* ¶¶ 51–53. In February 2019, Express was registered to do business in Louisiana. *Id.* ¶ 54.

Plaintiffs initiated this action in March 2019. [DE 1]. Plaintiffs, DLC and ASAP, bring nine causes of action against Mr. Miller and Express. Plaintiffs bring claims for (1) breach of the redemption agreement's non-compete, (2) breach of the redemption agreement's provisions regarding Mr. Miller taking title of a DCL vehicle, (3) trademark infringement under the Lanham Act, (4) trade dress infringement under the Lanham Act, (5) trademark infringement under N.C. Gen. Stat. § 80-11, (6) misappropriation of trade secrets under 18 U.S.C. §§ 1836 and 1839, (7) misappropriation of trade secrets under N.C. Gen. Stat. § 66-153 and common law, (8) unfair competition in violation of 15 U.S.C. § 1125 and North Carolina law, and (9) violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. [DE 1, ¶¶ 60–146].

In May 2019, plaintiffs moved for entry of a preliminary injunction, seeking to enforce the non-compete against Mr. Miller and prevent defendants from "engaging in ongoing infringement of Plaintiffs' protectable marks and unfair competition. [DE 20; 21, p. 29]. At that same time, plaintiffs moved for entry of default judgment against Express. [DE 18]. The following month, Express moved to dismiss plaintiffs' claims against it under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. [DE 22]. Ultimately, in July, plaintiffs filed notice of their voluntary dismissal, without prejudice, of Express. [DE 39].

In June 2019, defendant Miller moved to dismiss plaintiffs' claims against him under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [DE 32]. Mr. Miller argues that the non-compete is facially overboard and unenforceable, that plaintiffs have failed to adequately plead damages for Mr. Miller's alleged breach regarding the vehicle title, that the trademark claims fail because the two dental clinics operate in remote markets, and that the trade

4

secrets claims fail because plaintiffs have not identified actionable trade secrets. [DE 33]. Plaintiffs have responded in opposition to the motion to dismiss. [DE 38].

DISCUSSION

At the outset, because plaintiffs have given notice of their voluntary dismissal of defendant Express Urgent Dental Care, plaintiffs' motion for default judgment against Express and Express's motion to dismiss for lack of personal jurisdiction are both denied as moot.

**1. Defendant's motion to dismiss is denied.**

Defendant Miller has moved to dismiss plaintiffs' verified complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action with the support of conclusory statements does not suffice. *Iqbal*, 556 U.S. at 678. The Court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The Court finds that, as to each of their nine causes of action, plaintiffs have alleged sufficient facts to state claims upon which relief can be granted. Plaintiffs have plausibly alleged that Mr. Miller breached the September 2018 redemption agreement, infringed upon ASAP's trademarks, misappropriated ASAP's trade secrets, and engaged in unfair trade practices. As such, defendant Miller's motion to dismiss must be denied.

First, as to the breach of contract claims, plaintiffs have alleged sufficient facts to establish that Mr. Miller violated two provisions in the September 2018 redemption agreement. Mr. Miller first argues that the non-compete, which purports to cover the entire United States of America for 36 months, is facially overbroad and therefore unenforceable. For support, Mr. Miller relies on a handful of North Carolina decisions finding that, in the context of contracts between an employer and an employee, non-competes covering such a broad swath of territory are plainly unreasonable. [DE 33, p. 7–8]; *see, e.g., Hartman v. W.H. Odell & Assocs., Inc.*, 117 N.C. App. 307, 311, 450 S.E.2d 912, 916 (N.C. Ct. App. 1994) (discussing a "covenant in an employment agreement providing that an employee will not compete with his former employer"); *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 279, 530 S.E.2d 878, 881 (N.C. Ct. App. 2000) (discussing a non-compete "made a part of the employment contract"). Mr. Miller's reliance on such cases, however, is misplaced. Mr. Miller was not an employee of DCL, and the redemption agreement was not an employment contract. Rather, it was a heavily negotiated instrument signed in connection with the transfer, for valuable consideration, of the Miller Trust's interest in DCL.

North Carolina courts enforce non-competes "made in connection with the sale of a business" when they are (1) "reasonably necessary to protect the legitimate interest of the purchaser," (2) "reasonable with respect to both time and territory," and (3) "do[] not interfere with the interest of the public." *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 698, 784 S.E.2d 457, 461 (N.C. 2016) (quoting *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 662–63, 158 S.E.2d 840, 843 (N.C. 1968)). What constitutes reasonableness in this context is dependent upon the individual circumstances of each non-compete. *Seaboard Indus., Inc. v. Blair*, 10 N.C. App. 323, 335–36, 178 S.E.2d 781, 789 (N.C. Ct. App. 1971); *see also Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, 92, 638 S.E.2d 617, 622

(N.C. Ct. App. 2007) ("we are unable to conclude that a covenant restricting employment for six months with a direct competitor in a related capacity, even with a geographic scope potentially extending throughout North and South America due to the client-based restrictions, is overly broad and unenforceable as a matter of law").

Here, taking plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that plaintiffs have stated a claim for breach of the non-compete. The non-compete in the redemption agreement was made in connection with the sale of Mr. Miller's interest in DCL. Mr. Miller was a sophisticated party who was represented by counsel and negotiated carefully over the terms of the redemption agreement, including the non-compete provision. Given plaintiffs' professed interest in a nationwide expansion and alleged particular interest in the New Orleans metropolitan area, the non-compete's geographic restriction to the U.S., states east of the Mississippi, and North Carolina is not facially unreasonable. Plaintiffs reasonably believed the non-compete's restrictions, in terms of both time and territory, were necessary to protect their business interests, and the non-compete does not unduly interfere with the interest of the public. At this stage of the proceedings, plaintiffs have alleged sufficient facts to state a claim for breach of the non-compete provision.

Similarly, plaintiffs have alleged sufficient facts to state a claim for breach of the vehicle-title provision of the redemption agreement. Here, defendant Miller simply contends that plaintiffs have failed to plead that they suffered any damages as a result of his alleged failure to transfer title of a DCL vehicle into his own name. But plaintiffs have plausibly alleged that, as a result of Mr. Miller's failure to "sign for the title . . . and pay certain costs necessary to transfer title," they have suffered damages and are entitled at least to monetary relief. [DE 1, ¶¶ 69–71]. While those damages might end up being slight, at this stage, plaintiffs have stated a claim upon which relief

can plausibly be granted. As such, plaintiffs have stated actionable claims for breach of the September 2018 redemption agreement.

Second, as to the trademark and trade dress infringement claims, plaintiffs have alleged sufficient facts to establish that defendant Miller has infringed upon ASAP's trademarks. Mr. Miller argues, effectively, that because ASAP and Express are so far apart, there is no overlap between their respective markets and thus, as a matter of law, plaintiffs cannot prevail on their trademark claims. While the geographic distance between the markets certainly makes it more difficult for plaintiffs to ultimately succeed on the trademark claims, the distance is not fatal at this stage of the proceedings. Mr. Miller's argument is, essentially, that there cannot be any actual confusion given the lack of overlap. Actual confusion is one factor that courts faced with Lanham Act claims must consider, but it is not the only factor.

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege that he owns a valid, legally protectable mark and that the defendant has made unauthorized use of the mark in a way that is likely to cause consumer confusion. *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 158 (4th Cir. 2014). Courts are required to consider nine factors in evaluating the likelihood of consumer confusion. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170–71 (4th Cir. 2006). "[D]etermining the likelihood of confusion is an 'inherently factual' issue that depends on the facts and circumstances in each case." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 933 (4th Cir. 1995) (quoting *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.*, 962 F.2d 316, 318 (4th Cir. 1992)). And while actual confusion is one of the nine *Synergistic* factors, it is not required to prevail on a claim for trademark infringement. *Id.* Here, despite the difficulties that plaintiffs face in establishing actual confusion given the differences in the markets for ASAP and Express, plaintiffs have alleged sufficient facts to state a claim for

trademark infringement. Similarly, plaintiffs' complaint contains allegations relating to the logos, format, and font, as clearly depicted in the verified complaint and its exhibits, satisfies Rule 8(a)(2) of the Federal Rules of Civil Procedure, so plaintiffs' trade dress infringement claims may proceed.

Third, as to the misappropriation of trade secrets claims, plaintiffs have alleged sufficient facts to establish that defendant Miller has misappropriated ASAP's trade secrets. Here, Mr. Miller argues that plaintiffs have not provided sufficient detail regarding the trade secrets that were allegedly stolen. To state a misappropriation of trade secrets claim, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (N.C. Ct. App. 2004) (quoting *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (N.C. Ct. App. 2003)). But plaintiffs' complaint contains ample detail on the misappropriation of trade secrets claims and puts defendant Miller on notice of the claims against him. As quoted above, the complaint identifies purported trade secrets as "the study of market demographics, the development of market strategies, the use of industry partners and technology, [and] the provision of unique delivery platforms and revenue models." [DE 1, ¶ 13]. Ultimately, plaintiffs contend that Mr. Miller, as DCL's manager, had unique insight into ASAP's business model, contacts, and expansion plans, and exploiting that knowledge in opening a similar dental practice in the New Orleans metropolitan area—an area that plaintiffs had already targeted for expansion, as Mr. Miller knew. Taking plaintiffs' allegations as true, the Court finds that they have stated plausible misappropriation of trade secrets claims upon which relief could be granted.

Finally, Mr. Miller raises no challenge to plaintiffs' unfair competition claims other than to contend that the claims fail because plaintiffs have not plausibly alleged that defendant Miller

9

breached the redemption agreement, infringing any trademarks, or misappropriated any trade secrets. But, given that the Court now finds that plaintiffs have plausibly alleged that Mr. Miller did each of those things, it follows that plaintiffs have also plausibly alleged that Mr. Miller violated North Carolina's unfair trade practices law, N.C. Gen. Stat. § 75-1.1. *See, e.g., Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (N.C. Ct. App. 1992) (misappropriation of trade secrets under N.C. Gen. Stat. § 66-155 constitutes a violation of North Carolina's unfair trade practices law). As such, plaintiffs have alleged sufficient facts to state plausible claims upon which relief can be granted, and defendant Miller's motion to dismiss is, therefore, denied.

**2. Plaintiffs' motion for a preliminary injunction is denied.**

Plaintiffs have moved for entry of a preliminary injunction, asking the Court to enforce the non-compete in the September 2018 redemption agreement and prevent defendants from continuing to operate Express and continuing to infringe upon ASAP's trademarks. "A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 533 U.S. 674, 689 (2008) (quotation and citation omitted). To obtain a preliminary injunction, a movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Critically, each of these four requirements must be satisfied." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). A plaintiff can obtain an injunction only if "he demonstrates a clear likelihood of success on the merits, *and* the balance of equities favors him, *and* the injunction is in the public interest." *Id.* at 250 (emphasis in original).

The Court finds that plaintiffs have not established that they are entitled to a preliminary injunction. First, although the Court finds that plaintiffs have alleged sufficient facts to state actionable claims for breach of the non-compete, trademark and trade dress infringement, and misappropriation of trade secrets, plaintiffs have a much higher bar to clear to establish that they are likely to succeed on the merits of those claims. Second, given the lack of overlap between ASAP and Express's markets, plaintiffs have not established that they are likely to suffer irreparable harm in the absence of preliminary relief. The Court therefore finds, in its discretion, that plaintiffs have not demonstrated that they are entitled to a preliminary injunction.

In sum, plaintiffs have alleged sufficient facts to state claims upon which relief can be granted, and defendant Miller's motion to dismiss is, therefore, denied. But plaintiffs have not established that they are entitled to the extraordinary remedy of a preliminary injunction. Because plaintiffs have voluntarily dismissed defendant Express, plaintiffs' motion for default judgment and Express's motion to dismiss are both denied as moot.

## CONCLUSION

For the above reasons, defendants' first motion to dismiss [DE 22] is DENIED AS MOOT, plaintiffs' motion for default judgment [DE 18] is DENIED AS MOOT, defendants' second motion to dismiss [DE 32] is DENIED, and plaintiffs' motion for a preliminary injunction [DE 19] is DENIED.

SO ORDERED, this /2 day of August, 2019.

TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE